NOT FOR PUBLICATION                                                                          (Doc. Nos. 5, 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOANNE BIJEAU-SEITZ, et al. | |
| Plaintiffs, | Civil No. 12-6372 (RBK/AMD) |
| v. | **OPINION** |
| ATLANTIC COAST MORTGAGE SERVICES, INC. et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Bank of America, N.A. ("BOA") to dismiss the complaint of Joanne Bijeau-Seitz and Robert Seitz ("Plaintiffs"). Plaintiffs allege that BOA fraudulently delayed review of a loan modification application, made numerous fraudulent misrepresentations, breached their loan modification contract and the implied covenant of good faith and fair dealing, and also negligently processed Plaintiffs' loan modification request. Plaintiffs also assert claims based on alleged violations of the Federal Fair Debt Collection Practices Act ("FDCPA") and the New Jersey Consumer Fraud Act ("NJCFA"). BOA argues that Plaintiffs were not entitled to a loan modification and that none of the claims are properly pled. For the reasons expressed below, BOA's motion is **GRANTED IN PART, DENIED IN PART**. Because Plaintiffs failed to submit a proposed amended complaint to their motion to amend, Plaintiffs' motion to amend is **DENIED**.

I. **BACKGROUND**

On January 22, 2008, Plaintiffs entered into a loan agreement with Atlantic Coast Mortgage Services, Inc. ("Atlantic") after refinancing their home mortgage several times. Compl. ¶4. Under the terms of the thirty-year loan, which was secured by a mortgage on Plaintiffs' home, Plaintiffs owed principal in the amount of $243,397.00 with a 6% interest rate to be assessed annually. Id. at ¶4-5. At some point thereafter, Plaintiff Robert Seitz lost his job and Plaintiffs began having trouble making their mortgage payments. Id. at ¶6. On July 21, 2009, Plaintiffs contacted BOA to determine whether they were eligible for modification of their loan. Id. at ¶7-8. Plaintiffs submitted the relevant documentation to be considered for the Federal Home Affordable Modification Program ("HAMP"). Id. at ¶9. As time progressed, Plaintiffs' financial condition became so dire that they began receiving food stamps and Medicaid. Id. at ¶9. On October 26, 2009, Plaintiffs again contacted the bank to ascertain the status of the modification review process. Id. at ¶10. The representative with whom Plaintiffs spoke advised that the lender would need a "financial hardship letter" in order to complete the review. Id. at ¶11. Plaintiffs allege that Mr. Seitz sent the letter the same day. Id.

Within weeks, Plaintiffs hired Global Client Solutions to help expedite the process. Id. at ¶12. Plaintiffs allege that they paid a $1,700.00 fee and that Global Client Solutions began corresponding with BOA on their behalf. Id. On December 1, 2009, Plaintiffs again called BOA and were informed that the bank would need a new hardship letter and further documentation. Id. at ¶13. Although Plaintiffs insisted that they had already provided the information, the representative informed them that they would need to re-send it and that BOA would take up to 45 days to review their file. On February 10, 2010, a BOA representative informed Plaintiffs

that they had never received the requested documentation, despite Plaintiffs' alleged delivery confirmation receipt.

This back and forth continued for several months. See Id. at ¶¶16-24. On September 30, 2010, a BOA representative informed Plaintiffs that they were reviewed for a "special forbearance program" because they did not qualify for HAMP. Id. at ¶24. Plaintiffs allege that BOA violated HAMP requirements and protocols when it failed to notify them of their HAMP denial. Id. at ¶25. On December 7, 2010, a BOA representative informed Plaintiffs that they were approved for a modification at 4.87% fixed for 30 years and that their new monthly payment would be $1,907.00. Id. at ¶27. The representative allegedly told Plaintiffs that the paperwork would be sent out "shortly." Id. On January 4, 2011, a BOA representative informed Plaintiffs that their file was closed because the bank determined that they were not actually qualified for the modification offered. Id. at ¶30.

On May 26, 2011, Plaintiffs contacted BOA and were told to submit additional documentation. Id. at ¶33. After submitting the information and having several conversations with BOA representatives, on June 20, 2012, Plaintiffs' attorney was informed that Plaintiffs did not qualify for modification because of their more than twelve month arrearage. Id. at ¶68. Plaintiffs' attorney was further informed that Plaintiffs' only options were to surrender their home via deed in lieu of foreclosure, or pay BOA over $10,000 by the end of the month and submit new information for a new review for modification. Id. at ¶69. Plaintiffs allege that BOA has since referred their file to foreclosure counsel. Id. at ¶70.

Plaintiffs now contend that BOA fraudulently refused to accept monthly payments when the outstanding balance was manageable and intentionally delayed the review process. Id. at ¶¶72-75. Plaintiffs further argue that BOA misrepresented that they were eligible for

3

modification and that they had been approved for modification. Id. at ¶¶77-81. Plaintiffs also accuse BOA of negligently processed their loan modification request. Id. at ¶¶92-94. Plaintiffs additionally assert claims for breach of contract and for breach of the implied covenant of good faith and fair dealing based on BOA's failure to perform the loan modification after advising Plaintiffs that they qualified. Id. at ¶¶82-91. Finally, Plaintiffs allege that BOA violated the NJCFA by engaging in "unconscionable commercial practices" and the FDCPA by contacting Plaintiffs directly after being notified that they were represented by counsel. Id. at ¶¶95-101. BOA has moved to dismiss Plaintiffs' complaint in its entirety, arguing that Plaintiffs' allegations do not amount to cognizable legal claims.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

**III. DISCUSSION**

Plaintiff alleges that BOA violated both state and federal law during their loan modification review process.  The Court will address each count of the Complaint in turn, granting BOA's motion to dismiss as to some claims and denying the motion as to others.  The Court will then address Plaintiffs' Motion to Amend.

*1. Counts 1 and 2: Fraudulent Inducement and Fraudulent Misrepresentation*

Plaintiffs first assert claims against BOA for fraudulent inducement and fraudulent misrepresentation.  The law governing each of these claims is the same as that of common-law fraud.  Kare Distribution, Inc. v. Jam Labels & Cards LLC, No. 09-00969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009).  In New Jersey, the elements of a common law fraud claim are (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intent that the other person rely on it, (4) reasonable reliance thereon by the other person, and (5) resulting damages.  Banco Popular N. Am v. Gandi, 876 A.2d 253, 260 (N.J. 2005).  A common law fraud claim must be plead with particularity under Federal Rule of Civil Procedure 9(b).  Fredericko v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007).  Thus, a

party claiming fraud must "plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

BOA challenges the plausibility of Plaintiffs' fraud-related claims because "Plaintiffs fail to plead, at minimum, the fifth element, resulting damages." BOA's Br. at 6. BOA argues that Plaintiffs' allegations merely establish that Plaintiffs were in the same economic position prior to the bank's alleged misrepresentations as they were after the purported fraud. Id. at 7. BOA notes that Plaintiffs have not pled that they were assessed any late fees or other penalties and consequently cannot maintain an action for fraud against the bank. Id. Plaintiffs counter that they specifically pled that they paid Global Client Solutions' $1700.00 fee and that BOA induced them into such debt that they were unable to re-pay the large lump sum owed.[1]

The Court finds that Plaintiffs fail to adequately allege damages for their fraud claims. To the extent that Plaintiffs argue that BOA induced them to accrue debt, Plaintiffs have not stated how this alleged inducement actually damaged them. As BOA notes, "[i]f Plaintiffs chose not to save the payments that were deferred during the modification review process, that decision is attributable to them, not BOA." BOA Br. at 7. As to the Global Client Solutions payment, the Court remains skeptical that such a fee would constitute damages. Although Plaintiffs did not detail Global Client Solutions' exact role in the modification review process, Plaintiffs state that the company corresponded with BOA on their behalf and faxed documentation upon request.

---

[1] In their opposition, Plaintiffs allege that "they expended substantial time, incurred legal fees, etc. and while not specifically pled in so many words, late fees, interest, 'property inspection fees,' Bank of America's counsel fees, 'property reservation fees,' and other 'miscellaneous fees' *were* added to the Seitzes' loan account." (emphasis in original) Pl. Opp'n at 5. However, the Court cannot consider these additional allegations that were never set forth in Plaintiffs' pleadings. See Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (The "new allegations contained in the [plaintiff's] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"); See also Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.")

See Compl. ¶¶12, 15.  This voluntary expenditure on representational services seems more akin to an attorney's fee than to a compensatory damage and would consequently not suffice to save Plaintiffs' fraud claims. See Baker v. National State Bank, 801 A.2d 1158 (N.J. Super. Ct. App. Div. 2002) ("Traditionally, an award of attorney fees is not considered to be compensatory, but provided as a policy mater in specific types of cases, to remedy problem of unequal access to courts."); See also Rendine v. Pantzer, 661 A.2d 1202, 1219 (1995) ("Under the so-called 'American Rule,' adhered to by the federal courts and by the courts of this state, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'"). However, the Court declines to resolve this question because Plaintiffs allege other damages in their opposition brief that are sufficient.  Therefore, the Court will grant BOA's motion to dismiss without prejudice, providing Plaintiffs the opportunity to properly seek leave to amend.

2. *Count 3: Breach of Contract*

Plaintiffs also assert a breach of contract claim against BOA based on the bank's failure to perform the loan modification after informing Plaintiffs that they were approved.  Plaintiffs allege that "in consideration" for their performance of each of the lender's requests, BOA offered to modify their loan, which Plaintiffs assert they immediately accepted. See Compl. ¶¶83-84.  Thus, Plaintiffs contend that they had an enforceable contract, which BOA breached by placing Plaintiffs' loan back in default status. Id. at ¶85.  BOA argues that any alleged contract is invalid because the modification "agreement" lacked consideration.  BOA Br. at 8.

The law is well-settled that even where there has been offer and acceptance, a contract is unenforceable "without the flow of consideration-both sides must 'get something' out of the exchange." Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*,* 459 A.2d 1163, (N.J. 1983), 1171, cert. denied*,* 464 U.S. 994 (1983).  This premise applies equally to agreements

to modify existing contracts as to new contracts. Oscar v. Simeonidis, 800 A.2d 271, 276 (N.J. Super. Ct. App. Div. 2002) (citing County of Morris v. Fauver, 707 A.2d 958, 100 (1998)). Although a contract requires consideration, "the value given or received as consideration need not be monetary or substantial." Id. at 276. Thus, even a "very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract." Id. quoting Joseph Lande & Son v. Wellsco Realty, 34 A.2d 418, 423 (N.J. 1943).

Plaintiffs' allegations surely meet this low threshold. Plaintiffs allege that for almost two years, they remained in purgatory, uncertain of the status of their loan modification. Plaintiffs contacted BOA numerous times, only to be instructed to submit further documentation and additional hardship letters. After a convoluted back and forth, Plaintiffs were offered a modification over the telephone, which Plaintiffs allege that they immediately accepted. In their opposition brief, Plaintiffs argue that modifying the loan provided a benefit to BOA by allowing the bank to avoid the drawn-out and costly process of foreclosure. Pl.'s Opp'n at 6. Given these allegations and arguments, Plaintiffs have adequately alleged consideration.[2] In their reply brief, BOA attempts to frame the dispositive inquiry as whether Plaintiffs were entitled to modification by virtue of submitting an application and then answers this question in the negative. BOA Reply at 9. However, this question is immaterial to whether the modification agreement, allegedly brought about by BOA's own actions and not merely Plaintiffs' submission of the modification application, was supported by consideration. BOA also urges the Court to ignore

---

[2] In the motion to dismiss, BOA argues that "Plaintiffs' Opposition relies on Cave for the principle that consideration for a loan modification can be found even in the slightest detriment to a borrower—in that case the borrowers' undergoing credit counseling." Def.'s Reply at 8. BOA continues on to distinguish the facts of Cave v. Saxon Mortg. Services, Inc. from Plaintiff's case. No. 11-4586 2012, WL 1957588 (May 30, 2012). Ultimately, BOA argues that "Cave's holding is inapplicable to the facts of this case, and Plaintiffs still fail to plead consideration to support a contract." Def.'s Reply at 8. BOA's distinction of Cave does not rebut Plaintiffs' consideration argument. Cave is relevant, not because it is factually analogous, but rather because the case recites well-established contract law on the minimal threshold for consideration.

8

Plaintiffs' "self-serving statement that 'foreclosure is not favorable to the lender'" because not foreclosing following a borrower default "is clearly a detriment to a secured creditor." Id. at 10. The "self-serving" nature of Plaintiffs' consideration argument is not dispositive of whether BOA received a "very slight advantage" or whether Plaintiffs incurred "a trifling inconvenience." Plaintiffs have pled that BOA's alleged offer was supported by consideration. As this is the only element of the breach of contract claim challenged by BOA, the Court will deny the motion to dismiss this claim.

   3.  *Count 4: Breach of Covenant of Good Faith and Fair Dealing*

Although Plaintiffs have alleged an enforceable contract, the Court will grant BOA's motion as to the breach of the implied covenant claim. Plaintiffs cannot maintain the action for breach of contract and breach of the implied covenant simultaneously. In New Jersey, every contract contains an implied covenant of good faith and fair dealing. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc., 864 A.2d 387, 395 (N.J. 2005); Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997). In order to succeed on a claim for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. Wade v. Kessler. Inst., 778 A.2d 580, 586 (N.J.Super.Ct.App.Div. 2001) aff'd as modified Wade v. Kessler Inst., 798 A.2d 1251 (N.J. 2002). Generally, the implied covenant has been applied in three ways: 1) the covenant permits the inclusion of terms and conditions not expressly set forth in the written contract, 2) the covenant has been used to allow redress for bad faith performance of an

agreement even where the defendant has not breached any express term, and 3) the covenant permits inquiry into a party's exercise of discretion expressly granted by the contract's terms. Seidenberg v. Summit Bank, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002).

Plaintiffs concede that under New Jersey law a plaintiff cannot maintain both breach claims based on the same conduct, but attempt to hurdle this obstacle by reframing their breach of the implied covenant claim. Plaintiffs argue that "Bank of America acted in a manner that had the 'effect of destroying or injuring the right of the other party to receive the fruits of the contract,' which directly violates the covenant." Pl. Opp'n at 7 (citing Hahn v. OnBoard, No. 09-3639, 2009 WL 4508580 (Nov. 16, 2009)). Even under this formulation, Plaintiffs' implied covenant claim is duplicative. Plaintiffs are not asserting that BOA complied with the express terms of the modification agreement, but did so in a manner that inhibited them from receiving the fruits of the contract. Plaintiffs are instead arguing that BOA deprived them of the benefits of the contract by not honoring the modification. Plaintiffs merely seek an additional path to recovery for BOA's alleged breach of contract. This is impermissible under New Jersey law and the Court will grant BOA's motion to dismiss this claim.

4. *Count 5: Negligence*

Plaintiffs have also asserted a negligence claim against BOA based on the bank's alleged negligent processing of Plaintiffs' loan modification application. This claim has been flatly rejected by several courts. See Beals v. Bank of America, N.A., No. 10-5427, 2011 WL 5415174 at *16 (D.N.J. November 4, 2011) (finding that bank had no duty imposed by law as predicate for negligent processing claim); See also Stolba v. Wells Fargo, No. 10-6014, 2011 WL 3444078 (D.N.J. Aug. 8, 2011). To state a viable negligence claim, a plaintiff must demonstrate a (1) that there was a duty of care, (2) the duty was breached, (3) and the breach was

the proximate cause of (4) actual damages.  Polzo v. Cnty. of Essex, 960 A.2d 375, 384 (N.J. 2008).  However, courts have repeatedly held that creditors do not owe a duty of care to borrowers.  See Stolba, 2011 WL 3444078 at *5; United Jersey Bank v. Kensey, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

In order to circumvent this established principle, Plaintiffs argue that BOA voluntarily undertook a fiduciary duty to Plaintiffs when it began providing Plaintiffs with "financial advice" and "direction."  See Pl.'s Opp'n at 8.  Plaintiffs then invoke precedent affirming the fiduciary duties of financial advisors.  This argument is unconvincing.  Plaintiffs cite no relevant precedent supporting the proposition that a self-interested bank can suddenly assume a fiduciary duty to consumers by providing "inconsistent and unsound advice, [failing] to return the phone calls and response to letters, [failing] to comply with HAMP protocol and requirements, and [promising] to provide certain services which they may have never had the intention of providing."  Compl. ¶¶93-94.  Regardless of how Plaintiffs attempt to frame BOA's actions, they cannot establish that BOA owed a duty of care.  Consequently, the Court must dismiss Plaintiffs' negligence claim with prejudice.

5. *Count 6: FDCPA*

In addition to their state law claims, Plaintiffs allege that BOA violated the FDCPA when the bank engaged in prohibited debt collection practices such as contacting Plaintiffs directly after being informed that Plaintiffs were represented by counsel.  See Compl. ¶96.  The FDCPA's primary goal is to protect consumers from abusive, deceptive, and unfair debt collection practices.  F.T.C. v. Check Investors, Inc., 502 F.3d 159, 165 (3d Cir. 2007).  In essence, the legislation prohibits "debt collectors" from using certain enumerated collection methods to collect from consumers.  Id.  A "debt collector" is broadly defined by the statute as

"any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).  The FDCPA also includes enforcement provisions, which allow consumers to sue an offending debt collector for actual damages, attorney's fees and costs, and statutory damages up to $1,000.  F.T.C. v. Check Investors, 502 F.3d at166.

The FDCPA's coverage does not generally extend to "creditors," as opposed to "debt collectors."  Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000).  A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. §1692a(4). Excluded from this definition is one who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  Id.  In determining whether an entity is a "creditor" or "debt collector," courts focus on the status of the debt when it is acquired.  F.T.C. v. Check Investors, 502 F.3d at 173.  Thus, one is a "debt collector" under the FDCPA if the debt in question was in default when acquired. Id.

BOA argues that Plaintiffs have failed to plead a cognizable FDCPA claim because they have not alleged that BOA is a debt collector subject to the act.  BOA argues that Plaintiffs' own allegations establish that BOA is not a debt collector because BOA began servicing the loan *before* Plaintiffs defaulted.  BOA further alleges that even if the bank was assigned Plaintiffs' mortgage after the default, BOA cannot be liable for the period following assignment because Plaintiffs have failed to allege "that such assignment was solely for the purpose of facilitating collection of such debt for another."  Def.'s Br. at 1 citing 15 U.S.C. §1692a(4).  Plaintiffs protest that it is unclear "without the opportunity to conduct discovery, when the Defendant

began servicing the subject loan" and that BOA is a debt collector under the statute. Pl.'s Br. at 9. However, BOA is correct that Plaintiffs' pleading does not meet the threshold requirements for an FDCPA claim. Plaintiffs have not pled that BOA is a debt collector subject to the FDCPA. As with Plaintiffs' fraud claims, the Court cannot rely upon assertions in Plaintiffs' moving papers to decide the motion. Accordingly, the Court will dismiss Plaintiffs' FDCPA without prejudice.

6. *Count 7: NJCFA*

Finally, BOA moves to dismiss Plaintiffs' NJCFA claim.[3] BOA argues that because Plaintiffs' CFA claim is based on the same underlying conduct as the fraud claims, the Court should similarly dismiss that claim.[4] The Court agrees. Because Plaintiffs assert that the unlawful conduct was BOA's purported fraud and the Court has dismissed the fraud claims, the Court will dismiss the NJCFA claim without prejudice. See Stolba, 2011 WL 3444078 at *5 (dismissing NJCFA claim because fraud claim dismissed).

7. *Motion To Amend*

Plaintiffs alternatively argue that if their complaint is in any way deficient, the Court should grant Plaintiffs' leave to amend. Plaintiffs cite Federal Rule of Civil Procedure 15(a), which states that the Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Plaintiffs argue that they have set forth a sufficient basis in their moving papers for the Court to grant leave. Pl.'s Opp'n at 11. However, Local Rule 7.1 states that "upon filing a motion for leave to file an amended complaint or answer . . . the moving party shall attach to

---

[3] To state a claim under the NJCFA, a plaintiff must show: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. Deutsche Bank Nat. Trust Co. v. Lacapria, No. 08–2174, 2010 WL 715617, at *5 (D.N.J. Mar.1, 2010); Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J.2007).

[4] Plaintiffs did not address this argument in their opposition and instead argued that they had adequately pled damages to support both the NJCFA and common law fraud claims.

13

<u>the motion a copy of the proposed pleading</u> or amendments and retain the original until the Court has ruled." (emphasis added) NJ L. Civ. R. 7.1(f).  Plaintiffs failed to comply with this rule and did not provide the Court a copy of their proposed amendment.  Accordingly, the Court will deny the motion to amend.  If Plaintiffs wish to seek leave of the Court to file an amended complaint, they are advised to consult with the Local Rules for the District of New Jersey.

## IV.   CONCLUSION

Plaintiffs have asserted the following claims against the defendants: fraudulent inducement, fraudulent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, negligence, and claims for violations of the FDCPA and NJCFA.  For the reasons previously stated, the Court will grant BOA's motion in part and dismiss the negligence claim with prejudice.  The Court will deny BOA's motion to dismiss the breach of contract claim.  Because Plaintiffs can potentially cure the deficiencies of their complaint by amending, the Court will dismiss the remainder of Plaintiffs' claims without prejudice.  The Court will also deny Plaintiffs' motion to amend for failure to comply with the Local Rules.  An accompanying Order shall issue today.

Dated:  6/27/2013                                                             /s/ Robert B. Kugler
                                                                                              ROBERT B. KUGLER
                                                                                              United States District Judge